## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TODD GREENE<br>PO Box 132<br>Dixonville, PA 15734 | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | No. _____ |
| | : | |
| v. | : | |
| | : | |
| TRI-STAR MOTORS, INC.<br>d/b/a Tri-Star Motors #15<br>930 Route 22 Highway West<br>Blairsville, PA 15717 | : | **JURY TRIAL DEMANDED** |
| | : | |
| Defendant. | : | |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.     This action has been initiated by Todd Greene (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) against Tri-Star Motors, Inc. (*hereinafter* referred to as "Defendant" unless indicated otherwise) for violations of the Americans with Disabilities Act ("ADA" - 42 USC §§ 12101 *et. seq.*) and Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C.S. §§ 2000a *et. seq.*).[1] As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff plans to amend his instant complaint to include claims under the Pennsylvania Human Relations Act ("PHRA" - 43 P.S. §§ 951 *et. seq.*) if and when those claims become administrative exhausted with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff's claims under the PHRA would mirror his federal claims under the ADA and Title VII as set forth herein.

## JURISDICTION AND VENUE

2.       This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a) (4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3.       This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4.       Pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the Western District of Pennsylvania, as Plaintiff was employed at Defendant's Indiana, PA location.

## PARTIES

5.       The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.       Plaintiff is an adult individual, with an address as set forth in the caption.

7.       Defendant is an entity organized under the laws of Pennsylvania which owns and operates a car dealership in Indiana, PA.

8.      At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

9.      Defendant is an employer pursuant to Title VII and the ADA because Defendant has and continues to employ 15 or more employers per calendar year.

## FACTUAL BACKGROUND

10.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.     Plaintiff worked for Defendant as a salesman for approximately one (1) year until his eventual termination on or about July 29, 2013 (discussed further *infra*).

12.     At all times relevant herein, Plaintiff was supervised by one, Mike Marquetta (spelled phonetically) – *hereinafter* "Marquetta".

13.     Before working for Defendant, Plaintiff had previously been a member of the military.

14.     Plaintiff has and continues to suffer from various physical and psychological impairments that amount to disabilities under the applicable state and federal laws including but not limited to back-related injuries and post-traumatic stress disorder ("PTSD").

15.     Plaintiff's aforementioned health conditions have and continue to severely limit his enjoyment of many life activities, including but not limited to - at times - working, performing manual tasks, walking, running, bending, lifting, climbing, and other activities.[2]

16.     For example, Plaintiff has had surgeries on his back which have resulted in permanent screws being inserted into his spine.[3]

---

[2] These impacts identified upon Plaintiff are only intended to be examples, not an exhaustive list.

17.    Plaintiff also is prescribed and regularly takes medication for his back conditions and his PTSD.

18.    Despite Plaintiff's aforementioned disabilities and limitations, Plaintiff was able to perform the duties of his job with Defendant well; however, Plaintiff would (at times) need reasonable accommodations.

19.    For example, Plaintiff would request infrequent days off of work due to his aforementioned health conditions.

20.    During Plaintiff's employment with Defendant, Marquetta would also harass Plaintiff about his health conditions, specifically his PTSD.

21.    For example, Marquetta would regularly make comments about how Plaintiff seemed "off his meds" in front of other employees.

22.    On or about April 26, 2013, Plaintiff informed Defendant's management that he needed to be out of work to have blood tests in connection with his health conditions.

23.    Approximately one day after his aforementioned blood tests, Plaintiff fell and aggravated his back-related disabilities and thereby needed the day off from work. Plaintiff informed Defendant's management that he would need the day off and permission was granted.

24.    On the next day that Plaintiff returned to work (which was a Monday), Marquetta told Plaintiff that he would need to present a note from his doctor for his weekend absences.

25.    Plaintiff had never been asked for a doctor's note by Defendant's management before April 26, 2013 although he had taken days off for appointments related to his medical conditions in the past.

---

[3] Under the ADA *as amended*, "The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures." 42 U.S.C. § 12102(4)(E)(i); 29 C.F.R. § 1630.2(j)(1)(vi).

26.    Plaintiff told Marquetta that he could obtain a note but that he did not have one at that time.

27.    Marquetta told Plaintiff that he needed the note now and sent Plaintiff home for the day.

28.    Instead of going home as instructed by Marquetta, Plaintiff instead went to the corporate location in Blairstown where he met with Defendant's CEO, one Kevin Sergent (*hereinafter* "Sergent").

29.    During such meeting with Sergent, Plaintiff told Sergent that he was being discriminated against because of his disabilities.

30.    When Plaintiff returned to work the following day, on or about April 29, 2013, Sergent told Plaintiff that he was terminated for job abandonment.

31.    Sergent further explained that Plaintiff had abandoned his job because he was not present at work on Friday and Saturday.

32.    Sergent later stated under oath at Plaintiff's unemployment hearing that Plaintiff was terminated for missing too many days from work.

33.    Not only was Plaintiff discriminated against, retaliated against, and harassed during his employment with Defendant because of his disabilities, need for accommodations, and/or complaints of discrimination by Defendant's management, but Plaintiff was often subjected to inappropriate comments of sexual nature from his direct supervisor, Marquetta.

34.    During Plaintiff's employment with Defendant, Marquetta would regularly tell employees, including Plaintiff, inappropriate sexual stories and jokes while they were attempting to conduct business.

35.     On or about April 18, 2013 (shortly before Plaintiff's termination on April 29, 2013), Plaintiff complained of inappropriate sexual conduct in the workplace to Sergent.

36.     Defendant terminated Plaintiff's employment approximately two (2) weeks after he made a complaint of sexual harassment and approximately one (1) day after he made a complaint of disability discrimination. Plaintiff was also told that he was terminated for attendance issues which Defendant's management knew were entirely attributable to his health conditions.

37.     Plaintiff believes and therefore avers that Defendant terminated his employment because of his disabilities, his need for accommodations, his complaints of disability discrimination, and/or his complaints of inappropriate sexual conduct in the workplace.

**COUNT I**
**<u>Violations of the Americans with Disabilities Act ("ADA", as amended)</u>**
**([1] Discrimination; [2] Failure to Accommodate; [3] Retaliation; [4] Hostile Work Environment)**

38.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

39.     Plaintiff properly exhausted his administrative remedies before proceeding in this Court for violations of the ADA by timely filing a Charge with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant Complaint within 90 days of receiving a notice of case closure and/or right-to-sue letter.

40.     Plaintiff was subjected to severe and pervasive treatment because of his medical conditions including but not limited to highly inappropriate and offensive comments about his medical conditions during his employment with Defendant.

41.     Plaintiff complained to Defendant's management that he was being discriminated against because of his disabilities.

42.    Instead of properly investigating or resolving Plaintiff's concerns of disability discrimination, Defendant's management terminated Plaintiff approximately one day after raising such concerns.

43.    Plaintiff's termination followed shortly after Plaintiff made Defendant fully aware of his aforementioned health conditions, in close proximity to his final request for medical accommodations, and shortly after his last complaint of disability discrimination.

44.    Plaintiff was terminated by Defendant because of: (1) his known health conditions; (2) his perceived health conditions; (3) due to his record of impairment; (4) because of his complaints of disability discrimination; and/or (4) because he requested reasonable accommodations for his aforementioned health conditions.

45.    Plaintiff made clear his need for time off from work due to his disabilities (a reasonable accommodation), but was refused any interactive process from Defendant.

46.    Instead, Plaintiff was terminated in retaliation for requesting medical accommodations (in the form of time off from work).

47.    Defendant's manager even stated under oath that he terminated Plaintiff for having too many absences.

48.    The actions as aforesaid in this Complaint constitute unlawful discrimination, retaliation, hostile work environment, and failure to accommodate under the ADA, as amended.

## COUNT II
## Violations of the Title VII of the Civil Rights Act ("Title VII")
### (Retaliation)

49.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

50.     Plaintiff properly exhausted his administrative remedies before proceeding in this Court for violations of Title VII by timely filing a Charge with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant Complaint within 90 days of receiving a notice of case closure and/or right-to-sue letter.

51.     During Plaintiff's employment with Defendant, Plaintiff's direct supervisor made inappropriate comments and discussions of a sexual nature to Plaintiff.

52.     Plaintiff complained of the aforesaid inappropriate sexual conduct to Defendant's CEO.

53.     Plaintiff began to experience increased hostility from Defendant's management immediately after the aforementioned complaint and was terminated within two (2) weeks of said complaint.

54.     It is therefore believed and averred that Plaintiff was terminated in retaliation for his complaints of inappropriate sexual conduct.

55.     The actions as aforesaid in this Complaint constitute violations of Title VII

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B.     Plaintiff is to be awarded punitive, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

8

C.     Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D.     Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

E.     Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

KARPF, KARPF & CERUTTI, P.C.

By: _____
Jeremy M. Cerutti, Esq.
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: June 16, 2014